IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUSIE JURAS,

    Plaintiff,

v.                                                        CV 11-0155 WPL/GBW

UNITED STATES OF AMERICA,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS WITHOUT PREJUDICE**

Defendant United States of America ("United States") moved to dismiss Plaintiff Susie Juras' ("Juras") complaint for lack of subject matter jurisdiction. (Doc. 24.) Juras, acting *pro se*, did not file a response to the motion. Pursuant to 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as the presiding judge and enter a final judgment. After carefully considering the motion, the pleadings, and the relevant law, I find that this court lacks subject matter jurisdiction because the United States has not waived sovereign immunity, and I grant the motion to dismiss without prejudice.

**FACTS & PROCEDURAL HISTORY**

On June 2, 2006, lighting struck in the Gila National Forest approximately twelve miles northeast of Silver City, New Mexico. (Doc. 1 at 2; Doc 26 at 1-2.) This ignited a large wildfire, known as the Skates Fire. (Doc. 1 at 2; Doc 26 at 1-2.) Juras owned property approximately ten miles from this area at the time of the Skates Fire. (Doc. 1 at 2.) The Silver City Ranger District of the United States Forest Service completed a Wildfire Implementation Plan for the Skates Fire, allowing it to burn and play a natural role in the management of the Gila's ecosystem. (Doc. 26 at

2.) When the fire began to spread in an unanticipated direction, the Forest Service changed tactics and conducted burn-out operations[1] to protect private property and contain the fire. (*Id*. at 3.)

By June 14, the fire was still burning and the smoke had gotten intolerable at Juras' property. (Doc. 1 at 2.) At a daily fire meeting for the community, a local fire chief told Juras' partner that the chance of the fire going through the Forest Service's fire management points was "less than one percent." (*Id*.)

On June 15, unexpected high winds spread the fire further. (Doc. 26 at 3-4.) The Skates Fire passed through the Forest Service's management points, including onto Juras' land. (Doc. 1 at 3; Doc. 26 at 4.) The Forest Service dug a trench around Juras' home and conducted burn-out operations on her property in order to control the fire. (Doc. 1 at 3; Doc. 26 at 4.) As a result of the operations, none of the homes in the area were damaged or destroyed (Doc. 26 at 4), but about twelve acres of Juras' land, covered in ponderosa pines and cedars, were "burned beyond repair" (Doc. 1 at 3-4).

Two years later, Juras filed a tort claim with the Department of Agriculture, which was subsequently denied on May 14, 2009. (Doc. 1 at 3.) She requested reconsideration of her claim, and that was denied on August 10, 2010. (*Id.* at 4.) She then brought this suit against the United States on February 15, 2011. (Doc. 1.) She alleges that the Forest Service negligently managed the Skates Fire and she seeks $250,000 in damages. (*Id*. at 4-5.)

## LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) seeks the dismissal of a plaintiff's complaint for lack of subject matter jurisdiction. Whether or not the court has

---

[1] "Burn-out" operations set fire inside a control line in order to consume fuel between the edge of the fire and the control line so that the wildfire cannot spread. (Doc. 26 at 3.)

jurisdiction to hear a claim is a threshold matter. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). As is clear from Article III of the United States Constitution, the federal courts are courts of limited jurisdiction. A plaintiff must demonstrate that the federal court has jurisdiction over her claims by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182, 189 (1936); *Dalton v. City of Las Vegas*, 282 F. App'x 652, 655 (10th Cir. 2008) (unpublished); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Until the plaintiff articulates an applicable jurisdictional basis, the federal court must presume that it does not have jurisdiction over a complaint. *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (citations omitted). If the court lacks jurisdiction, the complaint must be dismissed without prejudice. *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) ("Generally, a dismissal for lack of subject matter jurisdiction is without prejudice"); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (discusses Tenth Circuit opinions which hold that when a court dismisses a case for want of jurisdiction it must be without prejudice).

Courts do not have subject matter jurisdiction over complaints against the Untied States when the doctrine of sovereign immunity applies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature"). This is because the doctrine of sovereign immunity prohibits a lawsuit against the United States without its consent. *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted); *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1232 (10th Cir. 2010) (citations omitted). A court will only have subject matter jurisdiction if the United States expressly waives sovereign immunity in those cases. *Id.*

However, there are some exceptions to sovereign immunity, as well as exceptions to those exceptions. Congress has explicitly waived sovereign immunity through various acts, such at the Federal Tort Claims Act ("FTCA"), thus allowing individuals to sue the United States for damages.

The FTCA grants

> [T]he district courts . . . exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.

28 U.S.C. § 1346(b)(1) (2006). However, an exception to the FTCA re-establishes immunity when the claim arises out of "a discretionary function or duty on the part of a federal agency . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (2006).[2]

Thus, whether the Forest Service was exercising a discretionary function while managing the Skates Fire ultimately becomes a jurisdictional question that will decide whether Juras may proceed with her lawsuit. *See Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) ("the discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction"). To determine whether the discretionary function exception to the FTCA applies, I will apply the two part *Berkovitz* test, which asks whether the action was one of judgment or choice, and, if so, whether it is of the kind that the discretionary function exception is meant to protect. *Berkovitz* v. *United States,* 486 U.S. 531, 536 (1988). If the United States can prove that the discretionary function exception applies, then this court will only have subject matter jurisdiction if the United States waives sovereign immunity. Since the United States has made no such waiver, the case must be dismissed

---

[2]The United States also notes that immunity is not waived when the plaintiff brings a claim for "misrepresentation." (Doc. 25 at 10-11 (citing 28 U.S.C. § 2680(h) (2006)).) Juras mentions in her complaint that Forest Service personnel made some assurances regarding the containment of the fire. (Doc. 1 at 2 ("[M]y partner John Mouyos asked the Chief in Charge: What are the odds of this fire blowing through your management points? The Fire Chief in Charge responded, less than one percent"). In her prayer for relief, though, Juras does not clearly state a claim for misrepresentation, so I will not discuss this point at length. However, to the extent that any claim has been raised, the misrepresentation exemption would apply, sovereign immunity would be re-established, and this court would not have subject matter jurisdiction over the claim.

without prejudice.

## ANALYSIS

### I. Prong One: Judgment or Choice

Prong one asks whether the conduct at issue "involves an element of judgment or choice." *Berkovitz*, 486 U.S. at 536. The conduct is not considered involving judgement if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . . [because] the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. *See also United States v. Gaubert*, 499 U.S. 315, 322 (1991) (applying *Berkovitz*). To prevail on this point, the plaintiff must show that the government failed to follow a policy that is "specific and mandatory." *Elder v. United States*, 312 F.3d 1172, 1177 (10th Cir. 2002).

Juras has not shown that the Forest Service failed to follow an explicit mandate or policy in the management of the Skates Fire. In fact, the United States has proven the opposite: that the Forest Service did follow policies regarding wildfire management and suppression per agency guidelines, which involve discretionary balancing of competing interests.

The United States Forest Service is a bureau within the United States Department of Agriculture. Several congressional acts authorize the Forest Service to manage wildfires and protect the National Forest System lands and resources. *See generally* National Forest Management Act of 1976, 16 U.S.C. §§1600-1614 (2006) (directing agency to specify guidelines for land management plans); Granger-Thye Act of 1950, 16 U.S.C. § 572 (2006) (authorizing expenditures of Forest Service funds to erect buildings and structures for lands management); Bankhead-Jones Farm Tenant Act of 1937, 7 U.S.C. §§ 1010, 1011 (2006) (instructing Forest Service to develop a program for land conservation); Organic Administration Act of 1897, 16 U.S.C. § 551 (2006) (enabling statute). Additionally, rules promulgated by the agency specify that Forest Service Management Plans must

5

minimize serious or long-lasting hazards from wildfire. 36 C.F.R. § 219.27 (2011).

In order to carry out its duties under these statues, the Forest Service has developed fire management polices and guidelines. These include the Forest Service Manual 5100 - Fire Management ("FSM") (Doc. 26 Ex. A) and the Gila National Forest Fire Management Plan ("FMP") (Doc. 26 Ex. B). The FSM is ripe with language indicating that fire suppression operations entail a great deal of discretion. Specifically, in wildfire suppression operations, line officers are directed to:

> [M]inimize both suppression cost and resource loss consistent with the resource management objectives for the values to be protected and shall consider fire behavior, the availability of suppression resources, the values of natural resources and property at risk, direction in the forest land and resource management plan, and the potential cost of suppression.

(Doc. 26 Ex. A at 10.) The requirement that a firefighter "consider" factors is not akin to directing his or her precise actions in the field. Likewise, the FMP, which is specific to the Gila National Forest, also requires that the Forest Service consider a variety of factors, from ecosystem restoration, protection of species, and preservation of property and life. (Doc 26 Ex. B at 3-5.) It seems clear from this language that firefighters for the Forest Service are charged with balancing a number of situational factors specific to each unique fire, and that they invariably must exercise their discretion.

Of the multiple factors the Forest Service must consider, only the protection of human life appears to take any precedence. (*See* Doc. 26 Ex. A at 4 ("The protection of human life is the single, overriding suppression priority"); Doc. 26 Ex. B at 3 ("Firefighter and public safety is the first priority").) However, even this is not a concrete directive. *Tippet v. United States* explained that a directive that human life "take precedence over all other management actions" does not constitute a mandatory order which leaves no room for judgment. 108 F.3d 1194, 1197 (10th Cir. 1997).

Additionally, manuals and guidelines which enumerate multiple goals and policies do not equate to a "specific, mandatory directive." *Aragon,* 146 F.3d at 826.

The Forest Service's approach to the Skates Fire is consistent with the policies outlined in the FSM and the FMP. While the Forest Service was bound to protect human life, according to *Tippet,* this priority does not remove its fire management operations out of the scope of the discretionary function exemption. The decision to initially manage the fire by allowing it to burn and play a natural role in the ecosystem is consistent with the FSM's goal of ecosystem and resource management. (Doc. 26 at 2.) The burn-out operations limited the spread of the fire, protecting private property located on Signal Peak and the community of Pinos Altos. (*Id.* at 3-5.) It ultimately saved Juras' home. (*Id.*) During the course of the fire, the Forest Service consistently monitored the fire and the weather so as to be as responsive as possible. (*Id.* at 2.)

The policies of the Forest Service demand that firefighters consider a number of ever-changing factors when responding to each fire. Thus, I find that the Forest Service's management of the Skates Fire involved the judgment or choice of the Forest Service, as described by the agency's policies and regulations.

## II. Prong Two: Judgment Intended to be Shielded from Tort Claims

Since wildfire management involves judgment or choice under prong one, I will now move to the second prong to assess whether the judgment is of "the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. This prong requires an understanding of Congressional intent behind the FTCA and the reason for including the discretionary exception. In *United States v. Varig Airlines*, the Supreme Court considered the importance of Congress' decision to exempt some agencies from the FTCA's reach, explaining that "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social,

economic, and political policy through the medium of an action in tort." 467 U.S. 797, 814 (1984). The Court expanded this reasoning, clarifying that Congress sought to protect the efficiency of government operations. *Id.* (citing *United States v. Muniz*, 374 U.S. 150, 163 (1963)). Accordingly, when applying the second prong, the court should consider whether the decision is "susceptible to policy analysis," and if so, it is protected by the discretionary exception. *Elder,* 312 F.3d at 1181 (citing *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).

While the Tenth Circuit has not explicitly addressed whether wildfire management is the kind of decision intended to be shielded from tort claims, there is ample case law to support this conclusion. This circuit has repeatedly recognized held that the discretionary function exception is a defense to claims "arising out of dangers in the wilderness," especially when there are competing policy considerations. *Elder*, 312 F.3d at 1183 (holding the placement of safety signs at a scenic attraction in a National Park involves balancing policy decisions and is protected by the exception). *See also Kiehn v. United States*, 984 F.2d 1100 (10th Cir. 1993) (finding no duty to warn of known hazards along trail through wilderness area); *Johnson v. United States Dep't of Interior*, 949 F.2d 332, 337 (10th Cir. 1991) (holding that regulation of mountain climbing "involve[s] balancing competing policy considerations pertaining to visitor safety, resource availability, and the appropriate degree of governmental interference in recreational activity"). When the Tenth Circuit has denied the application of the exception in wilderness related cases, it has been in the narrow context of the government's failure to warn visitors of dangers when there were no other competing policy reasons not to issue the warning. *See Duke v. Dep't of Agric., 131 F. 3d 1407, 1412* (10th Cir. 1997) (holding that decision not to place a warning sign for falling rocks not discretionary because cost and policies such as natural preservation were not factors); *Boyd v. United States ex rel. U.S. Army, Corps of Eng'rs*, 881 F.2d 895, 898 (10th Cir. 1989) (failing to warn swimmers of dangers

at popular swimming hole does not implicate social, economic, or political policy judgments). Taken together, these cases demonstrate that wilderness management decisions are discretionary when the agency is tasked with considering competing social and political policies and goals.

Additionally, the United States correctly points out in its memorandum in support of its motion to dismiss that a number of other courts have held that the Forest Service's wildfire management is the type of policy judgment or choice intended to be protected by the exemption. (Doc. 26 at 15-16). *See generally Backfire 2000 v. United States*, 273 F. App'x 661, 662 (9th Cir. 2008) (unpublished) (citations omitted) ("The Forest Service's decision to set backfires was a policy judgment in that it 'involved a balancing of considerations, including cost, public safety, firefighter safety, and resource damage'"); *Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998) ("[S]tandards and procedures outline certain requirements for fire suppression, [but] they do not eliminate discretion because they do not tell firefighters how to fight the fire"); *Thune v. United States*, 872 F. Supp. 921 (D. Wyo. 1995) (holding that discretionary function exemption applies to Forest Service's decision to start fires to manage wildlife). While these decisions are not binding on this court, they are persuasive, especially in light of this circuit's holdings regarding the discretionary nature of wilderness management decisions involving competing policy considerations. I find that the judgment involved in wildfire management is of the type that Congress meant to protect with the discretionary function exemption and that the second *Berkovitz* prong has been met.

## CONCLUSION

The management of wildfires is a discretionary function under the FTCA. Thus, claims arising out of the management of wildfires are barred under the doctrine of sovereign immunity, and a district court lacks subject matter jurisdiction to hear such claims. Since the United States has not

waived immunity, I GRANT the United States' motion to dismiss the case without prejudice.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.